Judge Nicholas,
dissenting, delivered his own 0-pinion as follows :—
I concur in reversing this case, but for different reasons from those given by Judge Underwood.
I do not consider the patent of Hall contestable in a court of law, on the ground that it embraces land appropriated by entry or survey made previous to the act of 1815. See Bledsoe vs. Wells, IV Bibb, 329; Ross vs. Barland, I Peters, 664; Jennings vs. Whitaker, IV Mon. 50. I do not think the tenth section of that act, when properly construed, meant to confer any superiority upon such entry or survey, when valid, over survevs made upon warrants issued under the act, but simply to confer suc h superiority upon entries otherwise invalid for vagueness, and upon surveys not made conformable to entry. The former class of entries and surveys did not need legislative aid to confer superiority upon them — they already had it; the latter class had it not, and it was therefore the intention of the legislature to confer it upon them. This construction gives full scope and pertinent application and operation to every word in the first member of the tenth section. The opposite construction enlarges and strains the language beyond its necessary and natural import, contrary to the well established rule for construing all statutes which are in derogation of the general *578 j>¿)e¡1 0f jaw_ *Bnt jf the legislature, from snperabimdant caution, does say, and did mean to say, that all entries and surveys theretofore made, should he superior to surveys thereafter made, it is then but in affirmance and declaratory of the law, as it would ■have’been without the act, and that the character of superiority intended to be conferred, was only such as similar claims theretofore had over adverse surveys. That is an equitable superiority, to be enforced according to the then well established usages of law in a court of equity, and not in a court of law.
The act only makes surveys the commencement of title as against other surveys made under it, not as against entries and surveys theretofore made, and for the plain and obvious reason that it would be impracticable for the former to compete with the latter as"to priority in point of time.
I can perceive no more absurdity or contradiction, in the assertion, that the land in controversy was such as the statute prohibited from appropriation, and that it had nevertheless been appropriated, than Would arise from a similar affirmation with regard to any junior or second appropriation of land, under any other of the various systems known to the land laws of Virginia and Kentucky. Under none of ihern could there be more than one valid and rightful appropriation of the same land. When a legal ■ appropriation was once made, every subsequent appropriation of the same land was illegal and prohibited. Yet nothwithstandingthe supposed absurdity, the courts of this state and Virginia for the last fifty years have uniformly, and in countless instances, in -all proceedings at law, sustained the elder grant,, though issued upon such subsequent illegal appropriation.
• So far as regards this case, the only inhibition to be gathered from the act of 1815, against the appropriation of the land by the plaintiff, is that contain-, ed in the first section, which merely authorizes the location under it of waste and unappropriated land, from which the inference is fairly deducible, that th& location of appropriated land was not permitted. A similar inhibition, in almost the precise same form,. *579 is to he found in every land system that we have ever had.
When forming this new land office warrant system, whether it would not have been good policy in the legislature to subject all. conflicting titles, likely to grow out of it, to the test of a single-adjudication in a court of law, is an enquiry with' which I have nothing t© do. I will cheerfully acquiesce in that-course when it shall be prescribed in language sufficiently explicit to be understood. But if it be permitted to express my individual, opinion, it would-be, that true policy dictated the inhibition of any-investigation behind or dehors the patents. That the-eldest patent should be made to prevail in all cases both at law and equity. It is my belief that among ■ the ablest and most experienced jurists of our state-it has caused continued and increasing regret, that this course had not been taken by our courts in the early and original adjustment of this question ; that" they had not refused to permit the elder patent to-be invalidated for any cause whatever except that of actual fraud in its obtention. If this view needed' confirmation from the opinions of enlightened jurists out of the state, it. has- the strongest and most, direct sanction from the supreme court in the case of Polk vs. Wendell, V Wheaton, 293. It is there said, “ long experience had satisfied the mind of every member of the court'.of the glaring impolicy of ever admitting an enquiry beyond the dates of the grants under which lands are claimed'.'. But the peculiar situation of Kentucky and Tennessee- with relation to the parent states, Virginia and South Caro- ■ lina, and the statutory provisions and course of decision that have grown out- of that relation-, has imposed on this court the necessity of pursuing a course which nothing but necessity could have reconciled, to its ideas of law or policy.”
Entertaining this opinion upon-this part of-the-case, it is unnecessary for me to express any upon-any other branch of it. We concur, that upon the case, as made out, the plaintiff ought to have recovered.
Wherefore, the judgment must be reversed, with costs, and cause remanded for new trial.